UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES McGILL,

            Plaintiff,

  -vs-

VINCE BUZZELLI, TROY BLAKE,
KATHLEEN DREW, CITY OF ROCHESTER,
ROCHESTER POLICE DEPARTMENT,

            Defendants.

**DECISION AND ORDER
No. 6:19-cv-06228-MAT**

---

**I. Introduction**

Proceeding pro se, Charles McGill ("McGill" or "Plaintiff") instituted this action by filing a complaint (ECF #1) and a motion for leave to proceed in forma pauperis ("IFP") (ECF #2). The Court, in a Decision and Order dated June 5, 2019 (ECF #3), granted the IFP motion, dismissed the complaint without prejudice for failure to state a claim, and granted McGill an opportunity to file an amended complaint to cure the original complaint's pleading deficiencies. McGill timely filed a proposed amended complaint (ECF #4), and the Court must screen it for sufficiency pursuant to 28 U.S.C. § 1915(e)(2). For the reasons discussed below, the amended complaint is dismissed with prejudice.

**II. Standard of Review for Pro Se Complaints**

    **A. 28 U.S.C. § 1915(e)(2)(B)**

In enacting the original in forma pauperis statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic

incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 324 (1989)). With the passage of the Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), "Congress directed the federal courts to review or 'screen' certain complaints sua sponte and to dismiss those [1] that failed to state a claim upon which relief could be granted, [2] that sought monetary relief from a defendant immune from such relief, or [3] that were frivolous or malicious." Benson v. O'Brian, 179 F.3d 1014, 1015-16 (6th Cir. 1999) (citing 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (screening provision within the in forma pauperis statute); 28 U.S.C. § 1915A (screening of complaints filed by prisoners seeking redress from a governmental entity or its officers or employees)).

The screening obligation "applies equally to prisoner and nonprisoner in forma pauperis cases." S.B. ex rel. J.B. v. Suffolk Cty., No. 13-CV-446 JS AKT, 2013 WL 1668313, at *1 (E.D.N.Y. Apr. 17, 2013) (citing Awan v. Awan, No. 10-CV-0635, 2010 WL 1265820, at *1 (E.D.N.Y. Mar. 26, 2010); Burns v. Goodwill Indus., No. 01-CV-11311, 2002 WL 1431704, at *2 (S.D.N.Y. 2002)).

**B. Failure to State a Claim**

To determine whether a complaint fails to state a claim on which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(i), the Court applies the standard articulated in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544

(2007). The Supreme Court explained in Iqbal explained that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard does not require the plaintiff to show a "probability" of defendant's liability, but it "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see also id. (Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the—defendant—unlawfully—harmed—me accusation.") (quoting Twombly, 550 U.S. at 555).

In applying the plausibility standard, the Court is mindful that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). When evaluating the sufficiency of a pro se complaint, a court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quotation marks and quotation omitted). Thus, although a court is "obligated to draw

the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

**III. Summary of the Amended Complaint's Factual Allegations**

In drafting his amended complaint, McGill utilized the form used for non-prisoner civil rights cases brought pursuant to 42 U.S.C. § 1983. However, the amended complaint focuses solely on the alleged wrongful termination from his employment. The following facts are taken from McGill's amended complaint and are accepted as true for the limited the purpose of screening.

In January 2017, McGill was working at T and L Automatics, Inc. during the "Christmas shutdown." He had asked several times to be trained on the new manual saw but "he was denied; they refused to provide [him] reasonable accommodations so [he] can perform the essential functions of the job." Amended Complaint, ECF #4, p. 6 of 11. When the manual saw went into operation on January 3, 2017, he was told to run that saw as well as the electrical saw. He ran them for five months but there was some problem with the performance of the manual saw in that the parts were not being cut to a uniform size.

During the week of May 15, 2017, McGill was setting up two different saw jobs to be performed on two different days. One job was Wednesday, May 17th, at 10:36 a.m.; the other job was Thursday, May 18th, at 10:00 am. On both of these days, McGill "left work for an hour for personal business with no relief to run both machines but with other interference like harrassment [sic] and threats of

-4-

losing [his] job and failure to provide [him] reasonable accommodations to perform the job at hand." Id. He did not finish either job before the end of his 4-day workweek. He was terminated from T and L on Monday, May 22, 2017.

McGill also includes, as an exhibit (ECF #4-1) to the amended complaint, a letter to the Court in which he raises concerns about New York Criminal Procedure Law § 160.59 ("C.P.L. § 160.59").[1] He asserts that his "conviction record was wiped away" pursuant to this law, even though he never applied to have his record sealed or expunged or altered in any way. He believes that his "conviction record was altered to protect the person[s] from being incarcerated to jail/prison; who committed these various violations towards the plaintiff[.]" Exhibit (ECF #4-1), p. 5 of 9 (first alteration in original). He claims that this "alteration" of his criminal record "is causing an effect over the outcome of all [his] cases through the court system and . . . has been a factor of [his] tenure with that current employer[s] during [his] time at the job. . . ." Id. McGill asserts there "has been a pattern" from "one job to another [he] was terminated for jobs [he] never finished, for positions

---

[1] Beginning October 7, 2017, defendants can move to seal up to two "eligible offenses," one of which can be a felony. N.Y. Crim. Proc. Law § 160.59[2][a]. The statute's primary purposes are to "eliminate unnecessary barriers to opportunity and employment that formerly incarcerated individuals face and to improve the fairness and effectiveness of the state's criminal justice system." People v. Doe, 62 Misc. 3d 574, 577 (N.Y. Sup. Ct. 2018) (quotation omitted; alteration omitted). To that end, the Legislature has made it an "unlawful discriminatory practice 'to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation' that resulted in a conviction that was subsequently sealed pursuant to the new statute." Id. (quoting N.Y. Exec. Law § 296[16]).

[he] never wanted or signed up for, and jobs [he] did not even had hands on." Id.

Attached to the letter is a copy of a "record check" on McGill issued by the City of Rochester on December 28, 1995. The record check indicates that McGill had non-felony three convictions in 1990 and 1991: fourth-degree criminal mischief for which he received three years' probation; violation of probation, which was conditionally discharged and his probation restored; and loitering for the purposes of prostitution, which also was conditionally discharged and satisfied by 40 hours' community service. Exhibit (ECF #4-1) to Amended Complaint, p. 6 of 9.

**IV.     Screening the Amended Complaint**

   **A.  The Amended Complaint Fails to State a Claim Under 42 U.S.C. § 1983**

      **1.  Applicable Legal Principles**

To state a claim under 42 U.S.C. § 1983 ("§ 1983"), the plaintiff must allege both that the defendants violated the plaintiff's rights under either the Constitution or laws of the United States and that the defendants acted under color of state law. See 42 U.S.C. § 1983. To obtain an award of damages under § 1983, a plaintiff must allege that the defendant was directly or personally involved in the alleged constitutional deprivation or that the defendant had actual or constructive notice of the deprivation. Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995); Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). Since respondeat superior cannot provide a basis for liability under

-6-

§ 1983, see Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); a defendant may not be held liable merely because he or she held a high position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

In Monell, the Supreme Court held that municipalities and other bodies of local government are "persons" within the meaning of § 1983 and, as such, they may be sued directly if they are alleged to have caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. A plaintiff must prove that "policies or customs that [were] sanctioned" by the municipality caused the alleged constitutional violation. Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) (citing Monell, 436 U.S. at 694). "To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." Missel v. Cty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order) (citing Vives v. City of N.Y., 524 F.3d 346, 350 (2d Cir. 2008) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

### 2. Application to Hassett, Buzzelli and Blake

Buzzelli and Hassett are officers of T and L Automatics, Inc., which appears to be a privately-owned corporation located in

-7-

Rochester, New York. Blake is the operations manager at T and L Automatics and apparently was McGill's direct supervisor.

The Supreme Court has stated that when determining whether an entity engaged in state action, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 350-51 (1974) (citation omitted). There is no basis for inferring, from McGill's recitation of the facts, that T and L Automatics is a "regulated entity," such as a railroad or a public utility. Likewise, there is no basis for inferring that Buzzelli, Hassett and Blake are State actors themselves or somehow acted under color of state law for purposes of a Section 1983 claim. Thus, McGill clearly has not stated a claim under Section 1983 against Buzzelli, Hassettt and Blake.

### 3. Application to Drew

Although McGill names Drew as a defendant and provides a mailing address for her, he provides no information whatever about what role she played in the events giving rise to this lawsuit. Because McGill has failed to allege any personal involvement by Drew in the allegedly unlawful conduct about which he complains, much less that she had actual or constructive notice of that conduct, he has failed to state a § 1983 claim against her.

### 4. Application to the City and the RPD

McGill's amended complaint does not contain any allegations specifically mentioning the City and the RPD. The Court presumes

-8-

that he is naming them as defendants because the City issued the record check, and the convictions listed on the record check were based on arrests effectuated by the RPD. The Court further presumes that McGill is asserting that the City and the RPD were the entities responsible for moving, without his permission, to effect the expungement of his criminal convictions pursuant to C.P.L. § 160.59.

As an initial matter, the RPD is not an organization capable of being sued and must be dismissed as a defendant as a matter of law. See Steele v. Rochester City Police Dep't, No. 6:16-CV-06022-MAT, 2016 WL 1274710, at *2 (W.D.N.Y. Apr. 1, 2016) ("'In New York, agencies of a municipality are not suable entities' because '[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'") (quoting Mulvihill v. N.Y., 956 F. Supp.2d 425, 427 (W.D.N.Y. 2013) (quotation and citations omitted in original; brackets in original)).

The Court turns next to the sufficiency of the allegations against the City. "An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 759 (2d Cir. 1999) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). First, this claim has no arguable basis in fact because it based purely on rank speculation by McGill.

-9-

Second, the City is not an entity that would have been involved in the purported unauthorized motion to seal McGill's convictions. Under C.P.L. § 160.59, motions to seal are "made to the court in which the defendant was last convicted[,]" id. § 160.59(2)(a) (emphasis supplied), and "shall be served upon the district attorney of the county in which the conviction, or, if more than one, the convictions, was or were obtained[,]" id., § 160.59(2)(c) (emphases supplied), after which "[t]he district attorney shall notify the court within forty-five days if he or she objects to the application for sealing[,]" id. Neither the City nor the RPD would have had any involvement in processing a motion to seal under C.P.L. § 160.59.

In addition, Plaintiff's allegations fail to state a plausible claim of municipal liability against the City under Monell. The only "facts" included in McGill's amended complaint relate to his case alone—i.e., that he was the victim of an unauthorized motion to seal his previous criminal convictions under C.P.L. § 160.59. He does not allege that any other defendants have been the subject of unauthorized motions to seal. In other words, McGill has not made any factual allegations hinting that the wrongful motion to seal his convictions was made "pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality[,]" Missel, 351 F. App'x at 545 (citations omitted). It is well settled that "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct

by a mere employee of the [municipality]." <u>Newton v. City of New York</u>, 566 F. Supp.2d 256, 271 & n.92 (S.D.N.Y. 2008) (citing <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in <u>Monell</u>.") (footnote omitted)). McGill therefore has not plausibly alleged any facts to support an inference that the City has a custom or policy of making unauthorized motions to seal pursuant to C.P.L. § 160.59. <u>See</u>, <u>e.g.</u>, <u>Triano v. Town of Harrison, NY</u>, 895 F. Supp.2d 526, 538 (S.D.N.Y. 2012) ("The only facts included in Plaintiff's Amended Complaint relate to Plaintiff's own arrest by Barone . . . . Plaintiff therefore has not plausibly alleged any facts to support an inference that the Town has a custom of tolerating or covering up police abuses.") (internal citation omitted).

### B. Wrongful Termination

New York does not recognize tort causes of action for wrongful termination of an at-will employee. <u>Smalley v. Dreyfus Corp.</u>, 882 N.E.2d 882, 884 (N.Y. 2008). Under New York law, "[w]here the term of employment is for an indefinite period of time, it is presumed to be a hiring at will that may be freely terminated by either party at any time for any reason or even for no reason." <u>Lobosco v. New York Tel. Co./NYNEX</u>, 96 N.Y.2d 312, 316 (2001). Therefore,

McGill cannot state a claim for wrongful discharge under New York law. E.g., Ashmeade v. Citizens Bank, No. 17-CV-8994 (JGK), 2018 WL 3093963, at *5 (S.D.N.Y. June 22, 2018).

Within his claim of wrongful termination, McGill asserts a claim of failure to train, which he couches in terms of a "reasonable accommodation" claim under the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. § 12112 et seq. ("ADA"). It is clear, however, that he is not claiming a denial of a reasonable accommodation as that term is defined for purposes of the ADA. Rather, the gist of his claim is that T and L failed to provide him training on the manual saw in order to make him look incompetent and to justify firing him. The only injury McGill pleads with respect to his failure to train claim is termination from his job. "Negligence may not be used to circumvent the well-established principle of New York law that 'an at-will employee may be discharged for any reason or no reason at all.'" Ashmeade, 2018 WL 3093963, at *5 (quoting Colodney v. Continuum Health Partners, Inc., No. 03-cv-7276, 2004 WL 829158, at *6 (S.D.N.Y. Apr. 15, 2004); citing Horn v. N.Y. Times, 790 N.E.2d 753, 759 (N.Y. 2003)). Accordingly, McGill's claims of wrongful termination and failure to train must be dismissed. See, e.g., Ashmeade, 2018 WL 3093963, at *5 (plaintiff alleged that as a matter of company procedure, Citizens negligently failed to ensure FINRA U4 forms were timely updated, and his termination was a "guise" to preclude a FINRA investigation into the defendant's policies; district court dismissed, for failure to state a claim,

plaintiff's failure to train and negligent supervision claims alleging that plaintiff's discharge for failure to comply with company time sheet policy was wrongful because he was not trained properly and was not properly supervised).

**V. Conclusion**

For the foregoing reasons, the amended complaint (ECF #4) is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 5, 2020
Rochester, New York.